UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

RUSSELL J. BLOOMFIELD,

    Plaintiff,

v.                                        CIVIL ACTION NO. 5:23-cv-00535

FOREST RIVER, INC., and
CAMPING WORLD RV Supercenter - Katy,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending are Defendant Forest River, Inc.'s ("Forest River") Motion to Dismiss [ECF 3] and Defendant Camping World RV Supercenter – Katy's[1] ("Camping World") Motion to Dismiss [ECF 5], both filed August 15, 2023. On August 29, 2023, Plaintiff Russel J. Bloomfield responded in opposition [ECF 10], to which Defendants replied [ECF 11] on September 5, 2023.

**I.**

    On October 3, 2022, Mr. Bloomfield visited Camper World in Katy, Texas, to purchase a 5th Wheel Recreational Vehicle ("RV"). He told the salesman he wanted a new "5th Wheel RV that would be reliable and did not want a [RV] with mechanical problems, or any other defects." [ECF 1-2 ¶ 7]. He relied upon the salesman to select an RV matching this description.

---

[1] Camping World asserts it was incorrectly named in the Complaint as Camping World RV Supercenter – Katy, when its correct name is Southwest RV Centers, LLC d/b/a Camping World RV Supercenter. [ECF 6 at 1 n.1]. The Court thus **DIRECTS** the Clerk to amend the case style to reflect Camping World's correct designation.

[*Id.* at ¶ 8]. Mr. Bloomfield was ultimately drawn to a 2022 Cardinal 390 FBX 5th Wheel Camper manufactured by Forest River. [*Id.* at ¶ 5]. The salesman told Mr. Bloomfield the camper was new, in perfect condition, both mechanical and otherwise, and had a manufacturer's warranty.[2] [*Id.* at ¶ 10]. At no time was Mr. Bloomfield informed there were problems with the camper. [*Id.* at ¶ 25]. The parties inked a Retail Installment Contract and Purchase Agreement for the camper, after settling on the price of $114,754.78, plus tax. [*Id.* at ¶¶ 11, 12]. The Purchase Agreement, attached to the Complaint as Exhibit A,[3] contains the following disclaimer of warranties provision:

> **10. DISCLAIMER OF WARRANTIES AND LIMITATION/EXCLUSION OF REMEDIES. DEALER MAKES NO GUARANTEE OR WARRANTY, EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS AND EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE FROM THIS SALE TRANSACTION, AND SUCH WARRANTIES SHALL NOT APPLY TO THIS TRANSACTION OR THE UNIT. BUYER(S) UNDERSTAND AND AGREE, THAT DEALER MAKES NO WARRANTY ON THIS UNIT AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CONSTITUTE OR CREATE ANY DEALER WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED. BUYER(S) UNDERSTAND AND AGREE THAT ALL TERMS OF THIS AGREEMENT ARE BINDING AND SHALL APPLY IN ALL INSTANCES EVEN IF BUYER(S) ELECT TO PURCHASE AN EXTENDED SERVICE CONTRACT. BUYER(S) UNDERSTAND AND AGREE THAT THE EXPRESS TERMS OF ANY MANUFACTURERS WRITTEN WARRANTY, TO THE EXTENT ANY EXIST AND APPLY TO THE UNIT, CONTAIN AND CONSTITUTE BUYER(S)' EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THE UNIT MIGHT CONTAIN. BUYER(S) UNDERSTAND AND AGREE THAT ANY OTHER POTENTIALLY AVAILABLE REMEDY, UNDER THE UNIFORM COMMERCIAL CODE OR OTHERWISE, INCLUDING BUT NOT LIMITED TO REJECTION, RESCISSION, OR REVOCATION OF**

---

[2] Mr. Bloomfield does not attach Forest River's One-Year Limited Towable Warranty ("Limited Warranty") to, or discuss any provisions thereof in, his Complaint. Forest River attached the document to its Motion. [*See* ECF 4-2].

[3] The copy of the Purchase Agreement attached to the Complaint contains only the first page of the two-sided document. [*See* ECF 1-2 at 19]. Forest River, however, has attached both sides of the Purchase Agreement to its Motion. [*See* ECF 4-1]. The above-quoted paragraph appears on the second page of the Purchase Agreement. [*See id.* at 2].

**ACCEPTANCE, ARE HEREBY DISCLAIMED BY AND UNAVAILABLE AGAINST DEALER. BUYER(S) UNDERSTAND AND AGREE THAT THE TERMS OF THIS AGREEMENT; INCLUDING ALL DISCLAIMERS OF WARRANTIES AND DAMAGES, ARE "CONSPICUOUS" AND SHALL APPLY UNDER ALL CIRCUMSTANCES EVEN IF BUYER(S)' AVAILABLE REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.**

[ECF 4-1 at 2]. Mr. Bloomfield alleges "[a]t the time of the transaction, [he] did not intend nor agree to a purchase of the [camper] without implied warranties and, as a result of the salesman's statements, had no understanding or agreement to any exclusion of implied warranties." [*Id.* at ¶ 13].

Camper World delivered the camper to Mr. Bloomfield's residence in Raleigh County. [*Id.* at ¶ 14]. Mr. Bloomfield has continuously experienced problems with it and taken it to Camper World's repair center in Virginia on multiple occasions. [*Id.* at ¶¶ 16, 19]. Mr. Bloomfield asserts, "on information and belief, the problems were due to conditions of the [camper] which existed at the time [he] took possession of it, of which [Camper World and Forest River (collectively "Defendants")] were aware." [*Id.* at ¶ 17]. He further alleges the camper "also had further serious mechanical manufacturing conditions which existed at the time" of possession. [*Id.* at ¶ 18]. Specifically, he alleges Forest River manufactured the camper "in a substandard fashion causing" these defects. [*Id.* at ¶ 28]. He contends Defendants "knew or should have known of the above-described problems with the [camper]." [*Id.* at ¶ 26].

After multiple, failed repairs, Mr. Bloomfield informed Defendants "that he wanted to return the [camper] because of the problems, cancel the contract, and have all his money returned." [*Id.* at ¶ 19]. Defendants refused. [*Id.* at ¶ 20]. To avoid damage to his credit history, Mr. Bloomfield has "paid eight (8) monthly payments of $583.61 on the [installment] contract . . . for a total of $4,668.88 in payments." [*Id.* at ¶ 23, 24].

Mr. Bloomfield asserts the following claims against both Defendants: (1) Cancellation of Contract pursuant to Uniform Commercial Code ("UCC") sections 2-601 and 2-602 or, alternatively, section 2-608, "due to [D]efendants' breach of express and implied warranties, and for incidental and consequential damages," [*Id.* at ¶ 29] (2) Damages for Breach of Warranty, in the alternative to Count I, pursuant to UCC sections 2-714 and 2-711(3), (3) Cancellation under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2314 "for actual damages and to cancel the contract pursuant to . . . [Mr. Bloomfield's] rejection" or, "in the alternative, revocation of acceptance, for Defendants' breach of implied warranties," [*Id.* at ¶ 52] and (4) damages under section 2310(d) of the Magnuson-Moss Warranty Act, brought in the alternative to Count III, "for actual and punitive damages for Defendants' breach of implied warranties." [*Id.* at ¶ 61].

On August 15, 2023, after removal from the Circuit Court of Raleigh County, Defendants moved to dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(6). Forest River contends dismissal or transfer is proper based on a forum-selection clause in the Limited Warranty. [ECF 4]. The provision names the state courts of Indiana as having exclusive jurisdiction. [*Id.*]. Camper World urges the same result based upon the forum-selection clause in the Purchase Agreement naming the Texas court system. [ECF 6]. Alternatively, both Defendants passingly assert, without elaboration, that the Complaint should be dismissed "for its failure to state valid causes of action under West Virginia Law." [ECF Nos. 4 and 6 at 4].

Mr. Bloomfield responds dismissal is improper inasmuch as (1) the Complaint meets and exceeds any pleading obligations, and (2) the controversy bears no relationship to

Indiana, and "the choice of law forum is wholly absurd and merely a tactic to deter [Mr. Bloomfield] from litigating [his] case."[4] [ECF 10 at 7].

## II.

### A. *Governing Standard*

Our Court of Appeals has rejected Rule 12(b)(6) as the means to enforce forum-selection clauses. *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006) (explaining "Supreme Court precedent suggests that 12(b)(6) is not the appropriate motion for enforcing a forum-selection clause" and, additionally, "because a 12(b)(6) motion may be brought at any time prior to adjudication on the merits, analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing concerns as in the 12(b)(1) context."). Instead, it has held "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Id.* at 550; *see also id.* at 549-550 ("Treating a motion to dismiss based on a forum-selection clause under Rule 12(b)(3) avoids the logistic and theoretical intricacies of utilizing 12(b)(1), allows the court to freely consider evidence outside of the pleadings, unlike under a 12(b)(6) motion, . . . and is more consistent with the Supreme Court's treatment of such clauses[.]").

Following *Sucampo*, however, the Supreme Court has held "Rule 12(b)(3) [is] not [a] proper mechanism[ ] to enforce a forum-selection clause," and 28 U.S.C. "[s]ection 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 61 (2013).

---

[4] Mr. Bloomfield ignores Camper World's request for a transfer to Texas in accord with the Purchase Agreement.

5

When a forum-selection clause names a state or foreign, as opposed to a federal, forum, the Supreme Court concluded enforcement "is through the doctrine of *forum non conveniens*." *Id.* at 60. It stated "both [section] 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, [and] courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61; *see id.* at 60 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.").

Our Court of Appeals recognized this shift in *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018), explaining "in *Atlantic Marine*, the Supreme Court clarified that a party may not seek to enforce a forum-selection clause by moving to dismiss for improper venue." It thus appears *Sucampo* "has been impliedly abrogated, or at least significantly limited, and that the court must instead follow *Atlantic Marine*." *Sears Contract, Inc. v. Sauer Incorporated*, 378 F. Supp. 3d 435, 439 (E.D.N.C. 2019). As recognized by our Court of Appeals in *BAE Systems*, however, while the Supreme Court clarified in *Atlantic Marine* that the appropriate way to enforce a forum-selection clause pointing to a nonfederal forum "is through *forum non conveniens*, it left open the question of whether a defendant could obtain dismissal under" Rule 12(b)(6). *BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d at 470 n.5 (citing *Atl. Marine Const. Co.*, 571 U.S. at 61 n.4). While the Supreme Court ultimately declined to consider whether a defendant could use Rule 12(b)(6) to enforce a forum-selection clause, it observed "that a motion under Rule 12(b)(6), unlike a motion under [section] 1404(a) or the *forum non conveniens* doctrine, may lead to a jury trial on venue if issues of material

6

fact relating to the validity of the forum-selection clause arise." *Atl. Marine Const. Co.*, 571 U.S. at 61 n.4.

The Court declines to reject or adopt Rule 12(b)(6) as a proper mechanism to permit enforcement of the subject forum-selection clauses. The better course is to construe Defendants' motions as invoking *forum non conveniens*. This approach comports with *Atlantic Marine* inasmuch as neither clause names a particular federal district. *See Open Text Corp. v. Grimes*, 262 F. Supp. 3d 278, 284 (D. Md. 2017) (explaining "there is no need to frame Defendants' Motion within the added structure of Rule 12(b)(6)" when "the doctrine of *forum non conveniens* . . . provides an 'appropriate enforcement mechanism'" for a forum-selection clause designating a nonfederal forum.) (internal citations omitted)).

The doctrine of *forum non conveniens* provides a "district court . . . may dispose of an action . . . when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 5449 U.S. 422, 437 (2007). "In the typical case not involving a forum-selection clause, a district court considering . . . a *forum non conveniens* motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co.*, 571 U.S. at 62. As recognized by our Court of Appeals, "[t]he Supreme Court has established a three-part framework for *forum non conveniens* in which the moving party must show that an 'alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved.'" *dmarcian, Inc., v. dmarcian Europe BV*, 60 F.4th 119, 136 (4th Cir. 2023) (quoting *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011)). Additionally, a plaintiff's choice of forum is generally entitled to great "deference when the plaintiff chooses her home forum." *DiFederico v. Marriott Intern., Inc.*, 714 F.3d 796, 802-803 (4th Cir. 2013) (internal quotations and citations omitted). "Courts considering

a motion to dismiss under *forum non conveniens* against a citizen plaintiff choosing her home forum must apply this increased deference in their analysis." *Id.* at 803.

"If the alternative forum is both available and adequate, the district court must [then] weigh the public and private interest factors." *Tang*, 656 F.3d at 249. The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.*

The private interest factors include: (1) the relative ease of access to sources of proof, (2) the availability of compulsory process to obtain the testimony of unwilling witnesses, (3) the cost of obtaining testimony from willing witnesses, (4) the possibility of viewing the premises, and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. "While these factors guide the analysis of a motion to dismiss under *forum non conveniens*, the 'ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.'" *DiFederico*, 714 F.3d at 804 (internal citations omitted).

The analysis veers decidedly, however, when the parties have chosen "a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)); *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209 (4th Cir. 2022). A forum-selection clause is presumed valid and enforceable when it is mandatory in nature. *See BAE Sys.*, 884 F.3d at 469. As the Supreme Court and our Court of Appeals have noted, "courts will enforce such clauses 'in all but the most exceptional cases.'" *Whitaker*, 42 F.4th at 209–10 (quoting *Atl.*

*Marine*, 571 U.S. at 59).

A forum-selection clause is mandatory if "it contains 'specific language of exclusion.'" *Id.* at 472 (internal citations omitted). A resisting party may overcome the presumption of enforceability by demonstrating the forum-selection clause is unreasonable under the circumstances. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified" pursuant to section 1404(a) or dismiss the case under the doctrine of *forum non convenience* absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co.*, 571 U.S. at 62. "The presence of a valid forum-selection clause [thus] requires district courts to adjust their usual § 1404(a) [or *forum non conveniens*] analysis in three ways." *Id.* at 63.[5]

First, the plaintiff's choice of venue bears no weight. *Id*. Instead, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained [or dismissal based on the bargained for forum] is unwarranted." *Id.* Second, the district court "should not consider arguments about the parties' private interests." *Id.* at 64. And "[t]hird, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue" or a *forum non convenience* dismissal "will not carry with it the

---

[5] Again, while the focus of the Supreme Court's decision in *Atlantic Marine* was related to enforcement of a forum-selection clause pointing to a particular federal district by way of a motion to transfer venue under section 1404(a), the Supreme Court explicitly recognized therein that "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way" inasmuch as "both [section] 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard." *Atl. Marine Const. Co.*, 571 U.S. at 61. In other words, the court analyzes a motion to dismiss under the *forum non conveniens* doctrine based on a forum-selection clause pointing to a nonfederal forum just as it would a motion to transfer under section 1404(a) based on a forum-selection clause specifying a particular federal district.

9

original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Simply put, only the public interest factors may weigh against transfer. *Id.* Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 64 n.6. But, given that "those factors will rarely defeat a transfer [or dismissal] motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

**B.     *Analysis***

The forum-selection clause between Mr. Bloomfield and Forest River provides as follows:

> **EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES RELATING TO THIS LIMITED WARRANTY, AN ALLEGED BREACH OF WARRANTY, BREACH OF IMPLIED WARRANTIES, OR REPRESENTATIONS OF ANY KIND MUST BE FILED IN THE COURTS WITHIN THE STATE OF INDIANA.**

[ECF 4-2 at 5]. Mr. Bloomfield acknowledged and accepted the Limited Warranties' terms by signing the Customer Delivery and Warranty Registration Form, which was executed as part of the sale. [ECF 4-3]. The acknowledgement appearing directly above Mr. Bloomfield's signature and the date of the execution specifically provides:

> I have had the opportunity to review the Forest River, Inc., Limited [W]arranty during the purchase of this unit and I understand that this product is designed to be used for recreational camping and travel. I have been given the opportunity to make notations in the space provided above, [and] have observed or received satisfactory explanation to all questions regarding the items listed during this delivery process.

[*Id.*]

Similarly, the forum-selection clause between Mr. Bloomfield and Camper World provides:

> 14. <u>CHOICE OF LAW AND VENUE, FEES</u>. Any controversy, dispute or claim arising out of or relating to this Agreement or breach thereof shall be interpreted under the laws of the state in which Dealer is located and venue will be in the state and county in which Dealer is located or the applicable federal court. If Dealer brings a legal action to enforce or interpret this Agreement and prevails, Buyer(s) shall pay Dealer's reasonable attorneys' fees and costs incurred in the defense of such action or any part thereof.

[ECF 4-1 at 2]. As noted, Camper World is in Texas. [*Id*. at 1]. The Purchase Agreement was signed by Mr. Bloomfield. [*Id.*].

Both forum-selection clauses are mandatory and thus presumptively enforceable. Indeed, each clause includes "specific language of exclusion" demonstrating all disputes among the parties "shall" and/or "will" be resolved in the designated venues of Indiana and Texas. *See Gita Sports Ltd. v. SG Sensortenchnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008) (explaining "[a] crucial distinction between a mandatory clause and a permissive clause is whether the clause only mentions jurisdiction or specifically refers to venue.") (internal quotations and citations omitted); *Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009) (noting "words such as 'shall,' 'only' or 'exclusive' are often indicators that a clause is mandatory").

Mr. Bloomfield does not contend otherwise. He challenges only the Forest River clause -- and that on narrow grounds -- with this exceptionally lean statement:

> The choice of law provision in this case is the law of Indiana. Not one part of this action has any causal connection to the State of Indiana. The unit was made in Indiana, sold by a dealer in Texas, and delivered to and paid for in West Virginia.
>
> The choice of law forum is wholly absurd and merely a tactic to deter Plaintiffs [*sic*] from litigating their [*sic*] case. The choice of law provision is not without assail.

[ECF 10 at 7]. This contention does not approach a showing of unreasonableness. Furthermore, Mr. Bloomfield has also forfeited any contention his claims do not arise out of the Purchase

11

Agreement, the Limited Warranty, or both.

Both forum-selection clauses are valid. The Court thus confines the remainder of its analysis to the public interest factors. Mr. Bloomfield, however, has not identified any exceptional public policy factor counterbalancing, much less outweighing, the two forum selection clauses. It thus bears repeating that "[i]n all but the most unusual cases, . . . 'the interest of justice' is served by holding the parties to their bargain." *Id.* at 66. Accordingly, the Court concludes this matter is not so unusual that the bargained-for forum selection clauses should not control; thus, dismissal is proper under the doctrine of *forum non conveniens*.

### III.

Based on the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss **[ECF 3; ECF 5]** pursuant to the doctrine of *forum non conveniens*. This case is **DISMISSED WITHOUT PREJUDICE** to its timely refilings in the proper fora.

The Clerk is **DIRECTED** to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: March 13, 2024

Frank W. Volk
United States District Judge